# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA

SHERIFF RUBEN MARTÉ,

     *Plaintiff,*

v.

TODD ROKITA, in his official capacity
as Attorney General of Indiana,

     *Defendant.*

Civil Action No. 1:26-cv-701

**STATEWIDE RELIEF SOUGHT**

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

## INTRODUCTION

1.     As the elected Sheriff of Monroe County, Indiana, Sheriff Ruben Marté is responsible for protecting the safety and welfare of his community. He must also honor his oath to uphold the Constitution of the United States. Ind. Const. art. 15, § 4.

2.     Indiana Senate Enrolled Act 76 ("SEA 76"), signed into law on March 5, would require Sheriff Marté to violate the Fourth Amendment to the U.S. Constitution because the law mandates that he and his officers detain individuals subject to a federal immigration detainer request without a judicial warrant or probable cause that the individuals have committed any crime. This provision will go into effect July 1, 2026.

3.     Sheriff Marté cannot order his officers to comply with SEA 76 without violating his oath to protect and uphold the Constitution and exposing the Monroe County Sheriff's Office ("MCSO") to significant civil liability from suits by individuals whose rights would be violated by the unlawful detentions. Indeed, well before SEA 76 was enacted, Sheriff Marté adopted a policy—Standard Operating Procedure MCSO-012 ("MCSO-012")—directing his officers not to

honor immigration detainer requests issued by U.S. Immigration and Customs Enforcement ("ICE") unless accompanied by a judicial warrant. This policy was designed to ensure that officers respect detainees' Fourth Amendment rights. But SEA 76 abrogates this policy and forces the Sheriff's Office to violate the Constitution by mandating compliance with all ICE detainer requests.

4.    If Sheriff Marté refuses to follow SEA 76's mandate that his officers comply with all ICE detainer requests, he will violate his responsibility to uphold state law and will risk civil liability from a suit by the Attorney General to enforce the law.

5.    Sheriff Marté therefore faces an impossible situation: any action he takes in response to SEA 76 will expose MCSO to liability and risk violating the fundamental duties of his office. Accordingly, he seeks a declaration that the ICE detainer mandate of SEA 76 violates the Constitution and an injunction to prevent the law from going into effect.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over the subject matter of this action under the United States Constitution and 28 U.S.C. § 1331.

7.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this District.

## PARTIES

8.    Sheriff Ruben Marté serves as the elected Sheriff of Monroe County, Indiana. He oversees the Monroe County Sheriff's Office.

9.    Todd Rokita is the Attorney General of Indiana. Under Indiana Code § 5-2-18.2-5, he is responsible for bringing suit to challenge any policies he believes to be in violation of Chapter 18.2 of the Indiana Code. He is sued in his official capacity.

2

## BACKGROUND

### Immigration Enforcement in the United States

10.      The Constitution vests Congress with "broad, undoubted power" over the status and removal of noncitizens. *Arizona v. United States*, 567 U.S. 387, 394-96 (2012). Congress has exercised that power to enact an exhaustive framework governing every aspect of the immigration system. 8 U.S.C. § 1101 *et seq.*

11.      Under this statutory scheme, immigration is considered a civil matter and federal immigration laws are principally enforced through civil proceedings. "As a general rule, it is not a crime for a removable alien to remain present in the United States." *Arizona*, 567 U.S. at 407; *see also id.* at 396 ("Removal is a civil, not criminal, matter.").

12.      Congress's framework includes provisions regulating the arrest and detention of noncitizens. *See* 8 U.S.C. §§ 1226, 1357. Responsibility for enforcing federal immigration laws belongs to the federal government; state and local officials generally lack the authority to enforce federal immigration laws. *Arizona*, 567 U.S. at 408-09. Federal law grants only limited immigration enforcement power to state and local officials. For example, 8 U.S.C. § 1103(a)(10) allows the federal government to authorize state and local law enforcement officers to exercise the powers of a federal immigration officer in the event of "an actual or imminent mass influx" of noncitizens; 8 U.S.C. § 1252c(a) allows state and local law enforcement officers to arrest an individual who is "illegally present" and had previously left the country after a felony conviction, after confirming with federal officials the status of such individual; and 8 U.S.C. § 1324(c) grants authority to "all other officers whose duty it is to enforce criminal laws" to arrest individuals for the criminal transportation or harboring of an undocumented immigrant.

13.    To be authorized to exercise other federal immigration powers, state and local law enforcement must be part of a "287(g) agreement" with the Department of Homeland Security ("DHS"). A 287(g) agreement is a formal agreement with the federal government to engage in the enforcement of federal immigration laws after mandatory training and under the supervision of federal law enforcement officials. 8 U.S.C. § 1357(g). Both federal and Indiana state law make entering into a 287(g) agreement completely voluntary. There is currently no 287(g) agreement between MCSO and the federal government.

### The Fourth Amendment

14.    Whether carried out by federal, state, or local law enforcement officers, immigration enforcement must be conducted in a manner consistent with the Fourth Amendment to the U.S. Constitution. *See Cotzojay v. Holder*, 725 F.3d 172, 181 (2d Cir. 2013) ("[I]t is uncontroversial that the Fourth Amendment applies to aliens and citizens alike.").

15.    Prolonging the detention of someone who has otherwise been cleared for release constitutes a new seizure within the meaning of the Fourth Amendment. *Morales v. Chadbourne*, 793 F.3d 208, 217 (1st Cir. 2015). It must therefore comply with the requirements of the Fourth Amendment.

16.    The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

17.    The Fourth Amendment creates a presumption that seizures should be made pursuant to a warrant issued by a detached and neutral magistrate upon a finding of probable cause to believe that the person committed a crime. *Terry v. Ohio*, 392 U.S. 1, 20 (1968) ("We do not retreat from our holdings that the police must, whenever practicable, obtain advance

judicial approval of searches and seizures through the warrant procedure . . . .”). “An arrest without a warrant bypasses the safeguards provided by an objective predetermination of probable cause” of a crime and thus undermines the core protections of the Fourth Amendment. *Beck v. Ohio*, 379 U.S. 89, 96 (1964).

18.    There are only a few exceptions to the warrant presumption, none of which is applicable here. *See Terry*, 392 U.S. at 20 (“[I]n most instances failure to comply with the warrant requirement can only be excused by exigent circumstances . . . .”); *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (“A warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer’s presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause.”).

19.    All arrests, whether or not made pursuant to a warrant, require probable cause that a crime has been or is being committed. *Dunaway v. New York*, 442 U.S. 200, 207 (1979) (noting that whether or not a warrant exception applied, “the requirement of probable cause, as elaborated in numerous precedents, was treated as absolute” (footnote omitted)). “In general, civil matters do not justify arrests or custodial seizures amounting to arrests.” *Lopez-Aguilar v. Marion Cty. Sheriff’s Dep’t*, 296 F. Supp. 3d 959, 976 (S.D. Ind. 2017), *rev’d on other grounds*, 924 F.3d 375 (7th Cir. 2019). The few narrow exceptions to that rule, including for “seizures under writs of bodily attachment,” “bench warrants for civil contempt of court,” and “seizures to effect involuntary commitments,” are also inapplicable here. *Id.*

20.    When an arrest is made without a warrant, there must be a “fair and reliable determination of probable cause . . . made by a judicial officer . . . promptly after arrest,” *Gerstein v. Pugh*, 420 U.S. 103, 125 (1975), generally within 48 hours, *see County of Riverside v. McLaughlin*, 500 U.S. 44, 55-57 (1991). “The scheme of the Fourth Amendment becomes

meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. . . . Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result [the Supreme] Court has consistently refused to sanction." *Terry*, 392 U.S. at 21-22.

### Immigration Detainer Requests

21.     Congress has vested the federal government with authority to arrest and detain noncitizens under particular circumstances. *See* 8 U.S.C. §§ 1226, 1357. Congress has also authorized federal immigration enforcement agencies to request that state and local officers detain someone only under specific circumstances, such as when a person has committed one of several enumerated crimes. 8 U.S.C. §§ 1226(c)(3), 1357(d). There is no statutory authorization for ICE or any other federal immigration enforcement agency to request that state and local law enforcement officers detain individuals outside of those specific circumstances, including simply for being removable.

22.     Nevertheless, by regulation, ICE has purported to grant itself the authority to request that state and local governments detain someone under other circumstances by issuing immigration or ICE detainer requests. 8 C.F.R. § 287.7. These detainer requests notify federal, state, and local law enforcement agencies holding an individual in custody that DHS seeks custody of that individual so that it may remove them. *Id.* § 287.7(a). They also ask the agency to "maintain custody" of the individual for up to 48 hours beyond when he would otherwise be released so that ICE can arrange to take him into custody. *Id.* § 287.7(a), (d). During that time

6

period, the holding agency's authority to detain the individual has lapsed, and the individual would otherwise be entitled to be free.[1]

23.	ICE detainer requests are just that—requests. Consistent with the Tenth Amendment, they do not and cannot compel a state or local law enforcement agency to detain an individual.

24.	The ICE detainer form, Form I-247A, has sections for identifying the name, date of birth, citizenship, and sex of the individual for whom the detainer is lodged. The federal officer filling out the form must also identify one of two bases for holding the individual: DHS has determined that probable cause exists that the individual is removable, or DHS transferred the individual to state or local custody for a proceeding or investigation. If the detainer is based on probable cause of removability, the federal officer must check a box to identify one or more bases for that determination from a set list:

(1) A final order of removal against the individual;

(2) The pendency of ongoing removal proceedings against the individual;

(3) Biometric confirmation of the individual's identity and a record check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the individual either lacks immigration status or notwithstanding such status is removable under U.S. immigration law; and/or

---

[1] SEA 76 defines an "immigration detainer request" as "a request issued by an authorized immigration officer to a law enforcement agency to detain an individual." Pub. L. No. 106 § 3. ICE sometimes issues documents that it styles as "detainers" requesting notice from state and local law enforcement agencies before they release an individual. *See, e.g.*, *Vargas v. Swan*, 854 F.2d 1028, 1030, 1035 (7th Cir. 1988) (describing detainers as "an internal administrative mechanism" which "merely serves to advise" a receiving agency of the suspicion that the subject is deportable (internal quotation mark omitted)). Those documents would not be considered "immigration detainer requests" under Section 9 of Chapter 18.2.

(4) Statements made by the individual to an immigration officer and/or other

reliable evidence that affirmatively indicate the individual either lacks

immigration status or notwithstanding such status is removable under U.S.

immigration law.

25.    The form does not seek information about whether there is probable cause to believe the individual has committed a crime or contain any space for such information to be added. Nor does the form contain any space for a federal officer to detail or provide the evidence that supports probable cause of removability, even if that is the basis identified for detaining the individual. There is no requirement in regulation that the detainer request be accompanied by a warrant, either judicial or administrative.[2]

26.    Form I-247A makes clear that the individual to be detained must be served with a copy of the form for the detainer to take effect. It also includes a notice to the detainee printed in five languages, which informs the individual that DHS has lodged a detainer request for them and offers information about what to do if they are detained longer than 48 hours or if they believe they are a citizen or the victim of a crime.[3]

---

[2] In response to litigation, ICE adopted an internal policy that detainer requests must be accompanied by either Form I-200 or Form I-205, both administrative warrants that are signed by ICE immigration officers rather than neutral magistrates. ICE, *Policy Number 10074.2: Issuance of Immigration Detainers by ICE Immigration Officers* 2 (issued Mar. 24, 2017), https://perma.cc/W3KT-GDFP. However, ICE maintains that there is no legal requirement that a detainer request be accompanied by an administrative warrant, *see id*. at 2 n.2, and Section 9 applies to a detainer request whether or not accompanied by an administrative warrant, *see* SEA 76, Pub. L. No. 106 §§ 3, 8.

[3] ICE detainer requests are plagued with errors, and ICE has repeatedly wrongfully detained U.S. citizens and other individuals who are not subject to removal. *See Gonzalez v. ICE*, 975 F.3d 788, 797, 811-12 (9th Cir. 2020) (class action suit brought by a U.S. citizen for whom ICE issued a detainer based on database errors); *Brown v. Ramsay*, 785 F. Supp. 3d 1214, 1219-20, 1230 (S.D. Fla. 2025) (granting partial summary judgment to U.S. citizen plaintiff who was detained for a second time on an erroneous ICE detainer due to ICE's failure to review comments in its database); Jackie Llanos, *Feds Blame U.S. Citizen for His Arrest Under Suspended Immigration*

27.   When local law enforcement officials hold an individual past their release date pursuant to an ICE detainer, that constitutes a new seizure under the Fourth Amendment. But such seizures do not satisfy the requirements of the Fourth Amendment.

28.   There is no requirement that when issuing an ICE detainer, federal immigration officials have probable cause to believe that an individual has committed a crime rather than a civil immigration violation.

29.   No neutral magistrate reviews an ICE detainer or the purported finding of probable cause of removability on which it is based before the detainer is issued. Instead, it is filled out and signed by the federal officer making the request, and virtually any federal immigration officer can make the request. Nor, in most cases, does ICE policy provide for neutral review of the detainer after it is issued or after an individual is taken into custody.[4]

**Senate Enrolled Act 76**

30.   On March 5, 2026, Indiana Governor Mike Braun signed into law SEA 76, An act to amend the Indiana Code concerning state and local administration. *See* Pub. L. No. 106, https://perma.cc/CWY7-MCPG.

---

*Law*, Florida Phoenix (Apr. 21, 2025), https://perma.cc/M7DL-43GC (noting that ICE had issued a detainer for a U.S. citizen arrested during a traffic stop); ACLU, *Recent Cases of U.S. Citizens Subjected to Unlawful Immigration Detainers* (Aug. 20, 2015), https://perma.cc/V5Q7-VGXQ. Reporting indicates that ICE "has detained, removed, or issued detainers for thousands of U.S. citizens." María Luisa Paúl, *Here Are the U.S. Citizens Caught in Trump's Immigration Crackdown*, Wash. Post (May 3, 2025), https://perma.cc/WWJ9-497Z.

[4] Pursuant to a class action settlement in *Gonzalez v. ICE*, No. 2:13-cv-04416 (C.D. Cal.), ICE is required to provide for neutral review of a probable cause determination not based on a final order of removal within 48 hours of issuing a detainer in the Central District of California. *See* Class Action Settlement Agreement & Release (Nov. 25, 2024), Dkt. No. 195-2 & Order Granting Joint Motion for Approval of Class Action Settlement (Dec. 4, 2024), Dkt. No. 198. However, ICE does not follow this policy elsewhere, including in Indiana.

31.     SEA 76 makes significant changes to Chapter 18.2 of the Indiana Code, which governs the maintenance and exchange of citizenship and immigration status information and the enforcement of federal immigration laws.

32.     Most pertinent here, the law adds a new Section 9 to Chapter 18.2, which requires a governmental body that has custody of an individual who is the subject of an immigration detainer request to notify the judge and individual of that detainer, record the detainer in the individual's case file, and "comply with all requests made in the immigration detainer request." Pub. L. No. 106 § 8 (to be codified at Ind. Code § 5-2-18.2-9). Section 9 contains no exception to this mandatory compliance requirement for immigration detainer requests that would violate federal or state law.

33.     SEA 76 also adds a provision to Section 5 of Chapter 18.2 authorizing the Attorney General to seek both an injunction and "a civil penalty of not more than ten thousand dollars ($10,000) for each knowing or intentional violation" of Chapter 18.2. Pub. L. No. 106 § 6 (to be codified at Ind. Code § 5-2-18.2-5).

34.     The amendment to Section 5 of Chapter 18.2 was effective upon passage of the law. The new Section 9 of Chapter 18.2 will go into effect on July 1, 2026.

**The Attorney General's Litigation Against Sheriff Marté**

35.     Even before the passage of SEA 76, the Attorney General took issue with Sheriff Marté's policy of directing MCSO officers not to honor ICE detainer requests without a judicial warrant, and he is currently litigating against Sheriff Marté and MCSO in state court over a prior version of MCSO-012.

36.     In 2023, Sheriff Marté adopted MCSO-012 to establish how MCSO officers are to handle issues related to interactions with noncitizens and with ICE. Sheriff Marté revised MCSO-012 in 2024, 2025, and 2026.

37.     In adopting MCSO-012, Sheriff Marté sought to strike a balance between safeguarding constitutional rights and supporting the federal government's immigration enforcement efforts in compliance with state law. As currently written, the policy provides that MCSO officers are free to participate in federal immigration enforcement in several ways, including by maintaining, communicating, and exchanging citizenship and immigration status information with DHS and other agencies. It also sets reasonable limits on the Office's engagement with federal immigration enforcement. Most notably, it directs officers not to detain someone past their release date based solely on a non-criminal or administrative ICE detainer request. However, MCSO officers are free to, and frequently do, provide notice to federal immigration officers of upcoming hearings or release dates for individuals subject to detainer requests.

38.     In 2024, Attorney General Rokita filed suit against Sheriff Marté and MCSO in Monroe County Circuit Court, alleging that aspects of the version of MCSO-012 then in effect violated the 2024 version of Indiana Code §§ 5-2-18.2-3 and -4 ("Section 3" and "Section 4") and seeking to permanently enjoin the policy under Indiana Code § 5-2-18.2-6 ("Section 6"). As relevant here, the Attorney General claimed that the detainer provision of MCSO-012—which remains intact in the Sheriff's current policy—violated Section 4 because it bars MCSO officers from assisting and engaging in the enforcement of federal immigration laws "to less than the full extent permitted by federal law." Ind. Code § 5-2-18.2-4. The Attorney General argued that

11

compliance with ICE detainer requests is allowed by federal law and that the Sheriff therefore may not adopt a policy against detaining people solely on the basis of an ICE detainer request.[5]

39.    The parties have completed discovery in that case, and cross motions for summary judgment, filed before SEA 76 was enacted, are pending.

**Sheriff Marté's Amended Immigration Policy**

40.    Sheriff Marté amended MCSO-012 on March 22, 2026, in light of the provisions of SEA 76 that became effective upon passage. *See generally* Exhibit A. Because compliance with ICE detainer requests that are not accompanied by a judicial warrant would violate the Fourth Amendment rights of those detained and expose Sheriff Marté and MCSO to potential civil liability, however, Sheriff Marté does not believe that he can lawfully amend the policy to require officers to comply with all detainer requests.

41.    If Sheriff Marté does not amend MCSO-012 to incorporate the mandatory detainer requirement of SEA 76, he risks being subject to an injunction and civil penalties of up to $10,000 for each violation of the law. Pub. L. No. 106 § 6(b).

42.    If, on the other hand, he chooses to comply with SEA 76 and amends his policy to direct his officers to honor ICE detainer requests, he risks a lawsuit from detainees and substantial civil liability, potentially in the millions of dollars.[6] And even more fundamentally,

---

[5] This litigation was brought before SEA 76 amended Section 4 to clarify that the provision only applies "as long as the enforcement actions do not violate federal or state law." Pub. L. No. 106 § 5. Given the Attorney General's position that compliance with ICE detainer requests is consistent with federal and state law, however, he is likely to continue to argue that this provision of MCSO-012 violates Section 4.

[6] *See, e.g.*, Max Rivera & Alicia A. Caldwell, *Wealthy County in New York Must Pay $112 Million Over Immigrant Rights Violations*, Bloomberg (Dec. 4, 2025, at 12:44 EST), https://perma.cc/D7SE-2P75.

compliance with SEA 76 would force Sheriff Marté to violate his oath to defend and uphold the United States Constitution.

43.     Sheriff Marté therefore faces an impossible decision: any action he takes risks violating the core tenets of his role as sheriff and creating an enormous risk of liability for himself and MCSO.

## CLAIM FOR RELIEF

### COUNT I
### Violation of the Fourth Amendment of the U.S. Constitution

44.     Sheriff Marté restates and re-alleges all preceding paragraphs as if fully set forth herein.

45.     Section 9(a)(3) of Chapter 18.2 will require employees of the Sheriff's Office to hold individuals in custody solely on the basis of an ICE detainer request. Moreover, as interpreted by the Attorney General, Section 4 prohibits Sheriff Marté from adopting a policy against detaining someone solely on the basis of an ICE detainer.

46.     ICE detainer requests are not warrants, as they are not issued by a neutral and detached magistrate. Nor is there any review by a neutral magistrate promptly following the detention of an individual. ICE detainer requests also do not state probable cause to believe that a person has committed a crime.

47.     By requiring blanket compliance with ICE detainer requests, SEA 76 would require Sheriff Marté and MCSO officers to seize individuals in violation of the Fourth Amendment of the U.S. Constitution.

48.     Sheriff Marté would be imminently and irreparably injured if Section 9(a)(3) were allowed to go into effect. The Court can remedy this injury by issuing a preliminary and/or permanent injunction.

49.     Moreover, there is an actual controversy between the parties over the legality of Section 9(a)(3) and the detention of a person based solely on an ICE detainer. This Court is empowered to declare the rights and other legal relations of the respective parties pursuant to 28 U.S.C. § 2201.

## REQUEST FOR RELIEF

WHEREFORE, Sheriff Marté respectfully requests that this Court enter judgment in his favor and grant the following relief:

a.     A declaration that Section 9(a)(3) of Chapter 18.2 is unconstitutional and invalid as applied to ICE detainer requests unaccompanied by a judicial warrant;

b.     A preliminary and permanent injunction enjoining Defendant from enforcing Section 9(a)(3), through Section 5 of Chapter 18.2 or otherwise, as applied to noncompliance with ICE detainer requests unaccompanied by a judicial warrant;

c.     A preliminary and permanent injunction enjoining Defendant from enforcing Section 4 of Chapter 18.2, through Section 5 or otherwise, as applied to the detainer provision of MCSO-012;

d.     An award to Plaintiffs of reasonable costs and attorneys' fees; and

e.     Such other and further relief that this Court may deem just and proper.

Dated:  April 8, 2026

Respectfully submitted,

 /s/ Alexandra Lichtenstein_____

David B. Schilling
MONROE COUNTY LEGAL DEPARTMENT
100 W Kirkwood Ave., Rm. 220
Bloomington, IN 47404
(812) 349-2525
dschilling@co.monroe.in.us

Alexandra Lichtenstein*
Mary McCord*
Shelby Calambokidis*
INSTITUTE FOR CONSTITUTIONAL ADVOCACY
AND PROTECTION
Georgetown University Law Center
600 New Jersey Avenue NW
Washington, DC 20001
Alex.Lichtenstein@georgetown.edu
(202) 661-6515

*Counsel for Plaintiff*

**Pro hac vice motions forthcoming*