UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SHERIFF RUBEN MARTÉ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  1:26-cv-00701-JPH-MJD |
| | ) | |
| TODD ROKITA, in his official capacity | ) | |
| as Attorney General of Indiana, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

THEODORE E. ROKITA
Attorney General of Indiana

JAMES A. BARTA
Solicitor General

BLAKE E. LANNING
Assistant Chief Deputy Attorney General

AARON M. RIDLEN
Deputy Attorney General

ROBERT M. BELDEN
Deputy Solicitor General

Office of the Attorney General
IGC South, Fifth Floor
Indianapolis, Indiana 46204
Tel: (317) 469-1952
Fax: (317) 232-7979
Email: Robert.Belden@atg.in.gov

*Counsel for Defendant*

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................2

LEGAL STANDARD............................................................................................................5

ARGUMENT ........................................................................................................................6

I.      This Court Lacks Jurisdiction over Plaintiff's Claim ...........................................6

        A.      The political subdivision doctrine bars Plaintiff's claim ........................6

        B.      Plaintiff lacks standing because he has no actual and imminent injury...................9

II.     The Court Should Abstain from Deciding Plaintiff's Request for Preliminary Injunction
        in Favor of the Prior, Ongoing State-Court Action Between the Parties...........................12

III.    Neither Section 4 nor Section 9(a)(3) Violates the Fourth Amendment on Its Face ........ 14

        A.      Sections 4 and 9(a)(3) do not facially violate the Fourth Amendment..................14

        B.      Plaintiff's arguments to the contrary lack merit ......................................................18

CONCLUSION....................................................................................................................24

**INTRODUCTION**

Plaintiff Sheriff Ruben Marté's complaint should be dismissed. As amended by Indiana Senate Enrolled Act 76 (SEA 76), Indiana Code Chapter 5-2-18.2 (Chapter 18.2) requires that state and local law enforcement agencies allow their officers to cooperate with federal immigration authorities, and will soon affirmatively require that state and local agencies comply with detainer requests issued by U.S. Immigration and Customs Enforcement (ICE). Marté, in his capacity as Sheriff of Monroe County, already prohibits his officers from complying with detainer requests— an unlawful policy that is currently the subject of an enforcement action brought by Attorney General Rokita in state court. But he seeks to prevent all state and local law enforcement in Indiana from complying with the detainers by bringing a facial challenge against Chapter 18.2. He claims that state and local law enforcement officers can *never* comply with detainers without violating the Fourth Amendment, and he asks this Court to declare the law unconstitutional on its face and enjoin its enforcement statewide.

But his claims should be dismissed for at least three reasons. First, this Court lacks subject-matter jurisdiction because Marté lacks justiciable claims. A subdivision of a state like the Monroe County Sheriff's Office (the Sheriff's Office) cannot sue the State itself under the political subdivision doctrine. Moreover, Plaintiff fails to show that he suffered actual or imminent concrete injury. He does not claim violation of his or the Sheriff's Office's Fourth Amendment rights. Rather, he sues over alleged injuries to third-party detainees subject to the ICE detainer requests, abstract constitutional grievances, and hypothetical future injuries. None of these is sufficient to confer standing.

Second, this Court should dismiss or stay this case because abstention by federal courts is appropriate when there is a parallel, pending proceeding in state court. That is the case here. The

Attorney General sued Marté nearly two years ago in state court for violations of Chapter 18.2 because the Sheriff's Office categorically refuses to cooperate with federal immigration authorities. That state-court action remains pending, and it raises the exact same Fourth Amendment issues that this lawsuit does in the same context. As a result, the interests of abstention would be well served by staying or dismissing this case to allow the state court to resolve the dispute between the Sheriff's Office and the State.

Finally, Marté's complaint fails to state a claim for which relief may be granted. The Fourth Amendment does not bar state and local officers from cooperating with federal immigration authorities by honoring ICE detainer requests, which show there is probable cause that the subject of the detainer request is removable. This is consistent with the Nation's longstanding history and multiple Fourth Amendment doctrines. Marté's theory to the contrary—that state and local law enforcement officers can never honor an ICE detainer request unless it's accompanied by a criminal judicial warrant—lacks any support in history or law. Critically, Marté cannot carry his heavy burden in this facial challenge to show that SEA 76 is invalid in all its applications. The complaint should be dismissed.

## BACKGROUND

Under the Constitution, Congress has broad authority over the status and removal of noncitizens. Dkt. 1 ¶ 10. Congress has authorized federal immigration officers to arrest and detain noncitizens, and to request state and local officers to detain individuals under certain circumstances. 8 U.S.C. § 1226(a); 8 U.S.C. § 1357(a)(2); 8 C.F.R. § 287.5(c); 8 C.F.R. § 287.7; Dkt. 1 ¶ 21. U.S. Immigration and Customs Enforcement (ICE), as a federal immigration enforcement agency, issues detainer requests to federal, state, and local law enforcement agencies holding an individual to "maintain custody" up to 48 hours until ICE can take him into custody. 8

2

C.F.R. § 287.7(a), (d); Dkt. 1 ¶ 22. ICE sends detainer requests using Form I-247A, and in the form, ICE conveys the name, date of birth, citizenship, and sex of the individual, as well as the basis for ICE's determination that there is probable cause to believe the individual is removable. Dkt. 1 ¶ 24; Dkt. 22-1; Dkt. 22-6. For the detainer to take effect, a copy of Form I-247A must be served on the individual subject to the detainer request. Dkt. 1 ¶ 26. In the form, ICE advises the individual what to do if they believe they should not be subject to the detainer, such as if they are an American citizen. Dkt. 1 ¶ 26. By policy, ICE requires that detainer requests be accompanied by administrative warrants that further convey the basis for ICE's probable-cause determination to state and local law enforcement. Dkt. 1 ¶ 25 & n.2 (citing ICE Policy Number 10074.2). The vast majority of Indiana sheriffs fully comply with ICE detainer requests. Dkt. 21-1 at 4.

Since 2011, Indiana law has forbidden state and local law enforcement agencies from restricting their officers' ability to cooperate with federal immigration authorities. Specifically, Section 4 of Chapter 18.2 of the Indiana Code prohibits state and local law enforcement from limiting their cooperation with federal immigration enforcement to "less than the full extent permitted by federal law." Ind. Code § 5-2-18.2-4; Dkt. 1 ¶ 38. That means state and local law enforcement cannot adopt a policy that prohibits officers from honoring ICE detainer requests.

Marté is Sheriff of Monroe County, Indiana, and oversees the Monroe County Sheriff's Office (the Sheriff's Office). Dkt. 1 ¶ 8. Unlike most Indiana sheriffs, Dkt. 21-1 at 4, ¶ 11, Marté and the Sheriff's Office do not comply with ICE detainer requests. In 2023, Marté adopted MCSO-012, which, in relevant part, "directs officers not to detain someone past their release date based solely on a non-criminal or administrative ICE detainer request." Dkt. 1 ¶¶ 36, 37. This part of MCSO-012 has remained despite several updates between 2024 and 2026, with the effect that for years the Sheriff's Office has not honored ICE detainer requests. Dkt. 1 ¶¶ 36, 40; Dkt. 1-1.

3

In July 2024, the Attorney General sued Marté and the Sheriff's Office in state court seeking to enjoin multiple provisions of Marté's policy that violate state law, including the prohibition on detainer compliance. *See Indiana ex rel. Rokita v. Marté*, No. 53C06-2407-PL-001733 (Monroe Cir. Ct.); Dkt. 1 ¶ 38.[1] As relevant here, the Attorney General alleges that Policy MCSO-012's provision barring compliance with detainer requests violates Chapter 18.2 Section 4 because it stops Marté's officers from assisting and engaging in the enforcement of federal immigration laws to "the full extent permitted by federal law." Dkt. 1 ¶ 38.

This state-court case is far along. Discovery has closed. Dkt. 1 ¶ 39. And the parties have fully briefed cross-motions for summary judgment. *See id.* The proceedings have been stayed temporarily through July 20, 2026, at Marté's request.

In March 2026, Indiana lawmakers amended Chapter 18.2 through SEA 76 to strengthen state and local cooperation with federal immigration authorities. 2026 Ind. Legis. Serv. P.L. 106-2026; Dkt. 1 ¶ 30. A new provision of Chapter 18.2, Section 9, requires that a governmental body that has custody of an individual who is the subject of an immigration detainer request to "comply with all requests made in the immigration detainer request." 2026 Ind. Legis. Serv. P.L. 106-2026 § 8 (West) (to be codified at Ind. Code § 5-2-18.2-9). Section 9 will go into effect July 1, 2026. 2026 Ind. Legis. Serv. P.L. 106-2026 § 8 (West); Dkt. 1 ¶ 34.

The law also strengthened enforcement. SEA 76 amends Section 5 of Chapter 18.2, authorizing the Attorney General to seek both an injunction and "a civil penalty of not more than ten thousand dollars ($10,000) for each knowing or intentional violation" of Chapter 18.2. 2026 Ind. Legis. Serv. P.L. 106-2026 § 6 (West) (to be codified at Ind. Code § 5-2-18.2-5). The

---

[1] This enforcement action was brough under the previous version of Chapter 18.2 Section 4. *See* 2026 Ind. Legis. Serv. P.L. 106-2026 (West) § 5 (amending Section 4).

amendments to Section 5 took immediate effect. 2026 Ind. Legis. Serv. P.L. 106-2026 § 6 (West).

Shortly after the General Assembly adopted SEA 76, while the state-court action was still pending, Marté filed this suit against the Attorney General, in his official capacity. Dkt. 1 ¶ 9. He asserts one claim: that Chapter 18.2 Sections 4 and 9(a)(3) violate the Fourth Amendment to the U.S. Constitution by requiring state and local law enforcement agencies to hold detainees after their scheduled release date based on ICE detainers. Dkt. 1 ¶¶ 44–49. Marté claims that Sections 4 and 9(a)(3) facially violate the Fourth Amendment because the ICE detainers are not accompanied by criminal judicial warrants. Dkt. 1 ¶ 46. He alleges that "compliance with ICE detainer requests that are not accompanied by a judicial warrant would violate the Fourth Amendment rights of those detained and expose . . . [the Sheriff's Office] to potential civil liability." Dkt. 1 ¶ 40. Marté requests declaratory relief and statewide injunctive relief to prevent enforcement of Sections 4 and 9(a)(3). Dkt. 1 at 14, ¶¶ (a)-(c).

## LEGAL STANDARD

Two standards apply here because the Attorney General moves to dismiss under Federal Rule of Civil Procedure 12(b)(1) and Rule 12(b)(6). Rule 12(b)(1) allows a litigant to move to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When considering a motion to dismiss under Rule 12(b)(1), "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (citations and quotation marks omitted); *see also Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008).

Rule 12(b)(6) allows litigants to move to dismiss a pleading that fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under

5

Rule 12(b)(6), the court "accept[s] all of the well-pleaded facts as true and draw[s] all reasonable inferences in favor of the plaintiff," *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018) (citations and quotation marks omitted), but the court "may reject sheer speculation, bald assertions, and unsupported conclusory statements," *Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020). The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is insufficient for a complaint to "plead[] facts that are "merely consistent with" a defendant's liability." *Id.*

## ARGUMENT

Marté's complaint should be dismissed for at least three reasons. This Court lacks subject-matter jurisdiction. As a political subdivision of the State, the Sheriff's Office cannot sue the State in federal court because suits between a state and its political subdivision do not present a justiciable case or controversy. Additionally, neither Marté nor the Sheriff's Office has suffered an actual and imminent injury. Even if this Court has jurisdiction, it should abstain in favor of the ongoing and far-advanced state-court action. Finally, Marté fails to state a claim because the Fourth Amendment in no way prohibits state and local law enforcement from detaining individuals based on ICE detainer requests.

## I.   This Court Lacks Jurisdiction over Plaintiff's Claim

Marté fails to present a case or controversy under the political subdivision doctrine and lacks standing because he has suffered no actual and imminent injury.

### A.   The political subdivision doctrine bars Plaintiff's claim

The Court has no jurisdiction to resolve claims brought by a subdivision of the State against

the State. It is well settled that "the political subdivision doctrine prevents municipalities from filing suit against their state." *Sharritt v. Henry*, No. 23 C 15838, 2026 WL 795868, at *4 (N.D. Ill. Mar. 20, 2026); *see City of Green Bay v. Bostelmann*, No. 20-C-479, 2020 WL 1492975, at *2 (E.D. Wis. Mar. 27, 2020) ("The political subdivision standing doctrine bars political subdivisions from advancing Fourteenth Amendment claims against their parent states."). As the Seventh Circuit has explained, "a state cannot sue one of its cities" in federal court "because as far as the national government is concerned a state and all of its creatures is a unit. That goes for cities suing their states, too." *City of South Bend v. South Bend Common Council*, 865 F.3d 889, 892 (7th Cir. 2017); *see also Mazanec v. N. Judson-San Pierre Sch. Corp.*, 763 F.2d 845, 848 (7th Cir. 1985) ("[F]ederal courts should not get involved unnecessarily in . . . intramural struggles of state government."). The State and its subdivisions are treated as a unit for jurisdictional purposes because "[a] municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under the Federal Constitution which it may invoke in opposition to the will of its creator." *Williams v. Mayor & City Council of Balt.*, 289 U.S. 36, 40 (1933). In short, when a political subdivision sues its parent state, the state is effectively the party on both sides, which means there is no live case or controversy justiciable in federal court.

Marté's claim falls squarely within the political subdivision doctrine. He is the Sheriff for Monroe County and necessarily sues in that capacity. He would not have standing to sue as a private individual because Chapter 18.2 Sections 4 and 9(a)(3) do not regulate the actions of individuals, only those of a "governmental body." 2026 Ind. Legis. Serv. P.L. 106-2026 (West) §§ 3, 8 (codified at Ind. Code § 5-2-18.2-4, and to be codified at Ind. Code § 5-2-18.2-9); *see Wis. Right to Life, Inc. v. Paradise*, 138 F.3d 1183, 1185 (7th Cir. 1998) (finding no standing where the challenged regulation did not apply to plaintiff). The complaint, moreover, makes clear that Marté

sues in his official capacity. He does not seek a personal exemption; he seeks an injunction prohibiting enforcement of Sections 4 and 9(a)(3) against any governmental body in Indiana. Dkt. 1 at 14, ¶¶ (b), (c). And the complaint discusses the possible effects of Sections 4 and 9(a)(3) on the entire Sheriff's Office. *See* Dkt. 1 ¶¶ 3, 5, 35, 37, 38, 40, 43, 45, 47. This all shows Marté sues in his official capacity. And it's well settled that "actions brought by [local] officers in their official capacities are the equivalent of actions brought by the" local government they represent. *City of Green Bay*, 2020 WL 1492975, at *2 (citing *Jungels v. Pierce*, 825 F.2d 1127, 1129 (7th Cir. 1987)). Thus, this lawsuit is brought by Monroe County.

Further, Monroe County and the Sheriff's Office are unquestionably political subdivisions of Indiana. Counties are a creation of state law, *see* Ind. Code § 36-2-1-1, deriving their powers from state statutes, *see, e.g.*, *id.* § 36-1-4 (including the power to sue and be sued). That is why state law regards "counties" as political subdivisions of the state." *Dep't of Pub. Welfare of Allen Cnty. v. Potthoff*, 44 N.E.2d 494, 497 (Ind. 1942); *see* Ind. Code § 36-1-2-23 (defining counties as a "unit" of local government); § 36-1-2-13 (defining political subdivision to include municipal corporations); *State v. Bd. of Comm'rs of Marion Cnty.*, 85 N.E. 513, 517 (Ind. 1908) ("A county is an involuntary corporation, organized as a political subdivision of the state by the Legislature, the sovereign power, solely for governmental purposes."). Similarly, state law creates the office of county sheriff, Ind. Const. art. VI, § 2, and specifies the sheriff's duties, Ind. Code § 36-2-13-5. Thus, this lawsuit is brought by a subdivision of the State of Indiana against the State of Indiana itself.[2] It is therefore precisely the kind of suit barred by the political subdivision doctrine.

---

[2] Suit against the Attorney General in his official capacity is "not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citation omitted).

### B.    Plaintiff lacks standing because he has no actual and imminent injury

Even apart from the fact that a political subdivision of the state cannot sue the state itself, Marté does not have standing to raise a Fourth Amendment challenge to Chapter 18.2 Sections 4 and 9(a)(3). "To establish 'the irreducible constitutional minimum of standing,' the plaintiff must have suffered an injury in fact traceable to the defendant and capable of being redressed through a favorable judicial ruling." *Sweeney v. Raoul*, 990 F.3d 555, 559 (7th Cir. 2021) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). The injury must be "concrete and particularized as well as actual or imminent, not conjectural or hypothetical." *Id.* at 559 (internal quotation marks omitted). "A 'particularized' injury is one that 'affect[s] the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan*, 504 U.S at 560). "Concreteness requires the injury to exist and be 'real,' not 'abstract.'" *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)).

Marté lacks standing because neither he nor the Sheriff's Office has suffered actual or imminent concrete injury. He does not allege that Sections 4 and 9(a)(3) violate his or the Sheriff's Office's rights. He instead sues because honoring detainers supposedly "would violate the Fourth Amendment rights of those detained." Dkt. 1 ¶ 40. But Marté has no standing to assert claims for detainees because "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *United States v. Fuesting*, 845 F.2d 664, 671 (7th Cir. 1988) (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969)); *see also Coley v. Abell*, 682 F. App'x 476, 478 (7th Cir. 2017).

To try to sidestep the bar on asserting another person's rights, Marté asserts three "possible future injur[ies]." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis omitted) (citation omitted). First, he argues that complying with Sections 4 and 9(a)(3) would "violate his oath to defend and uphold the U.S. Constitution." Dkt. 1 ¶ 42. But his subjective belief that honoring ICE detainer requests would violate his "oath alone is an insufficient injury to support standing." *Crane v. Johnson*, 783 F.3d 244, 253 (5th Cir. 2015); *see Drake v. Obama*, 664 F.3d

9

774, 780 (9th Cir. 2011) (noting such claims are "abstract constitutional grievances insufficient to meet the requirements of Article III" (internal quotation marks omitted)).

Second, Marté argues that honoring ICE detainers would potentially expose the Sheriff's Office to civil liability from suits by detainees. Dkt. 1 ¶ 42. That is incorrect. By honoring ICE detainer requests consistent with Sections 4 and 9(a)(3), the Sheriff's Office and its officers would simply be "carrying out non-discretionary duties subject to state policy control" and would be "treated as state officials for Eleventh Amendment purposes." *Cassell v. Snyders*, 990 F.3d 539, 552 (7th Cir. 2021); *see also Ruehman v. Sheahan*, 34 F.3d 525, 528–29 (7th Cir. 1994). Moreover, even if sovereign immunity did not shield Marté and his officers from liability, qualified immunity would. There is no clearly established law that officers would violate the Fourth Amendment by honoring ICE detainers based on administrative warrants. *Denius v. Dunlap*, 209 F.3d 944, 950–51 (7th Cir. 2000) (stating that, "[t]o determine whether a right is clearly established, we look first to controlling Supreme Court precedent and our own circuit decisions on the issue" before turning, if necessary, to other "caselaw" looking for "such a clear trend in the caselaw that . . . recognition of the right by a controlling precedent was merely a question of time" (citation omitted)). Indeed, there is precedent holding there is no constitutional problem with honoring detainer requests. *See City of El Cenizo v. Texas*, 890 F.3d 164, 187 (5th Cir. 2018). It is thus speculative that doing so would create liability.

Additionally, there is no evidence to suggest that the chain of contingencies that might result in the Sheriff's Office facing liability would ever come about. Indeed, the evidence tends to show the opposite. The Sheriff's Office has held detainees beyond their release date before and has not suffered the crippling liability that Marté posits. Dkt. 22-7 at 14–15 (Pl.'s Resps. to Interrogs. 5 & 6); *id.* at 11 (Pl.'s Resp. to Interrog. 2). In fact, ICE regularly issues detainers to

10

sheriffs throughout Indiana—sending more than 6,100 detainers since May 2024, of which more than 6,000 were honored allowing ICE to take the individual into custody. Dkt. 21-1 at 4, ¶¶ 10–11. Yet Marté has identified no Indiana sheriff who has ever been sued for honoring a detainer and faced the liability Marté hypothesizes.

The prospect that honoring detainers would impact Marté is even more remote considering that Chapter 18.2 authorizes the Attorney General to defend a sheriff sued for honoring a detainer. 2026 Ind. Legis. Serv. P.L. 106-2026 § 1 (West) (to be codified at Ind. Code § Ind. Code § 4-6-2-1.5(f)). Further, as the Attorney General also noted in a letter to all Indiana sheriffs, "[i]f a county were to be sued for honoring a detainer," he would "have the ability to intervene in the suit and help the county litigate the Fourth Amendment question" and "would intervene under those circumstances without hesitation." Dkt. 22-2 at 7. So it is far from likely that any detainee would actually sue Marté for complying with a detainer and even less likely that he or the Sheriff's Office would face liability. At bottom, Marté lacks standing because his theory of injury "require[s] guesswork as to how independent decisionmakers will exercise their judgment." *Clapper*, 568 U.S. at 413.

Third, Marté asserts that failing to amend his office's policies would subject the Sheriff's Office to a lawsuit from the State. Dkt. 1 ¶ 41. But as explained above, Marté, an official of the State's political subdivision, does not have a cognizable or justiciable interest in being able to take actions that violate state law. *See* pp. 6–8, *supra* (citing, inter alia, *City of South Bend v. South Bend Common Council*, 865 F.3d 889 (7th Cir. 2017)).[3]

---

[3] *See, e.g.*, *United States v. Texas*, No. 24-50149, 2026 WL 1122127, at *5 (5th Cir. Apr. 24, 2026) ("If El Paso County has standing . . . , any political subdivision could sue to challenge any state law, which flatly is not the case."); *City of Hugo v. Nichols (Two Cases)*, 656 F.3d 1251, 1255 (10th Cir. 2011) ("[F]ederal courts lack jurisdiction over certain controversies between political subdivisions and their parent states."); *City of San Juan Capistrano v. Cal. Pub. Utils. Comm'n*,

Since Plaintiff has not carried his burden to demonstrate standing, this Court lacks jurisdiction and should dismiss his claim.[4]

## II.   The Court Should Abstain from Deciding Plaintiff's Request for Preliminary Injunction in Favor of the Prior, Ongoing State-Court Action Between the Parties

If the Court does not dismiss for lack of jurisdiction, it should abstain under straightforward abstention principles. Abstention "derives from a desire to prevent federal courts from interfering with the functions of state [proceedings] and to preserve equity and comity." *Doe v. Univ. of Kentucky*, 860 F.3d 365, 368 (6th Cir. 2017) (citing *Younger v. Harris*, 401 U.S. 37, 44 (1971)). Abstention applies "[w]hen there [are] parallel, pending . . . state civil proceedings that are akin to criminal prosecutions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). *Younger* abstention "directs federal courts to abstain from exercising jurisdiction over federal claims that seek to interfere with pending state court proceedings." *J.B. v. Woodard*, 997 F.3d 714, 722 (7th Cir. 2021). And even if a proceeding is not a "exact fit" for *Younger*, abstention is proper in cases risking serious "federalism infringement[s]." *Id.* at 723.

Abstention is appropriate here. Marté's lawsuit "seek[s] to interfere with pending state court proceedings" that are akin to criminal prosecutions. *J.B.*, 997 F.3d at 722. As noted above, the State has brought an enforcement action against Marté in state court to enjoin the Sheriff's Office's violations of Chapter 18.2 Section 4 and to require that his officers be allowed to cooperate

---

937 F.3d 1278, 1280 (9th Cir. 2019) ("[P]olitical subdivisions lack standing to challenge state law on constitutional grounds in federal court.").

[4] Even assuming for sake of argument that Marté suffered an actual, imminent, and cognizable injury, his claim should be denied for the separate and additional reason that he does not identify any source of a cause or right of action here. *See generally* Dkt. 1. This is fatal to his claim. *See Wis. Voter All. v. Millis*, 166 F.4th 627, 634 (7th Cir. 2026) (explaining that even if plaintiffs showed an injury, they still "would lack standing" because "Congress has not created a private right of action for individuals to enforce [the statute] in federal court"); *Dinerstein v. Google, LLC*, 73 F.4th 502, 519 (7th Cir. 2023) ("To sue in federal court, a plaintiff must have both . . . a suitable cause of action" and "harm.").

fully with federal immigration authorities, including by continuing to detain individuals who are already in custody after being arrested for suspected state crimes in response to ICE detainer requests so that ICE may take custody of the individuals to remove them from the United States. *See* p. 4, *supra*. By requiring that these detainees remain in custody in response to an ICE detainer request and not go on to commit additional crimes, as Section 4 allows and as Section 9(a)(3) requires, the statute operates "in aid of and [is] closely related to [Indiana's] criminal statutes." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975); *see Trainor v. Hernandez*, 431 U.S. 434, 444 (1977) (reversing for failure to abstain when there was "a [prior state-court] suit by the State to recover from appellees welfare payments"); *Juidice v. Vail*, 430 U.S. 327, 334–36 (1977) (requiring abstention where there were prior judicial contempt proceedings in state court).

Further, abstaining here would properly "restrain[] equity jurisdiction within narrow limits." *Sprint*, 571 U.S. at 77 (quoting *Younger*, 401 U.S. at 44). Since Marté seeks to enjoin enforcement of Section 4, Dkt. 1 at 14, ¶ (c), and since the State is enforcing Section 4 in the state-court litigation, this lawsuit effectively asks this Court to interfere with the state-court proceedings. And the intrusion on federalism interests is all the greater considering that both suits are between the State and one of its political subdivisions. In short, allowing Marté to "directly affect[] the administration of the state courts" in this way "would run contrary to the basic principles of equity." *J.B.*, 997 F.3d at 724 (citation omitted).

Abstention would also serve judicial economy. Marté raises the exact same Fourth Amendment issues here that are currently being litigated in the state-court enforcement action, namely that complying with ICE detainer requests would violate the Fourth Amendment. Abstaining here would thus serve the interests of judicial economy by "avoid[ing] a duplication of legal proceedings." *Sprint*, 571 U.S. at 77 (citation omitted).

13

Likewise, abstention would also serve federal-state comity interests. At bottom, the Indiana state court adjudicating the parties' prior, ongoing litigation is fully capable of resolving the Fourth Amendment issues raised by the Sheriff's Office. After all, "if exclusive [federal] jurisdiction be neither express nor implied, the State courts have concurrent jurisdiction whenever, by their own constitution, they are competent to take it." *Claflin v. Houseman*, 93 U.S. 130, 136 (1876). "Exercising federal jurisdiction over [Plaintiff's] claims would reflect a lack of respect for the state's ability to resolve [these issues] properly before its courts." *J.B.*, 997 F.3d at 722 (internal quotation marks omitted). It also would insert a federal court into an ongoing struggle between the State and a political subdivision that has chosen to defy state law. Abstention is warranted.

The fact that the state court has temporarily stayed that case does not change that conclusion. The Seventh Circuit has made clear it is proper for a district court to abstain from hearing claims even where "the state court [had] agreed to stay the trial pending resolution of the federal suit." *Antosh v. Vill. of Mount Pleasant*, 99 F.4th 989, 993 (7th Cir.), *cert. denied* 145 S. Ct. 985 (2024); *see Tyrer v. City of S. Beloit*, 516 F.3d 659, 664, 666 (7th Cir. 2008) (affirming district court's decision not to lift stay where "the state trial court ha[d] dismissed [plaintiff's] claims based on a lack of jurisdiction" and plaintiff had appealed to state appellate court).

Accordingly, if the Court does not dismiss for Marté's lack of a justiciable claim and lack of standing, it should abstain from deciding his claim.

## III.    Neither Section 4 nor Section 9(a)(3) Violates the Fourth Amendment on Its Face

### A.    Sections 4 and 9(a)(3) do not facially violate the Fourth Amendment

Even if this Court has jurisdiction and does not abstain, Marté's facial challenge fails because Sections 4 and 9(a)(3) in no way violate the Fourth Amendment, and certainly do not do so "in all [their] applications." *Lukaszczyk v. Cook Cnty.*, 137 F.4th 671, 673 (7th Cir. 2025) (citation omitted). The Fourth Amendment prohibits only "unreasonable searches and seizures."

14

U.S. Const. amend. IV. Concerning both Section 4 and Section 9(a)(3), Marté claims that local law enforcement violates the Fourth Amendment whenever it honors an ICE detainer request that is not accompanied by a criminal judicial warrant. Dkt. 1 ¶ 40. But that argument flies in the face of multiple Fourth Amendment doctrines, history, and precedent. There is no unreasonable seizure when state or local law enforcement agencies cooperate with federal immigration authorities by honoring ICE detainer requests even absent a judicial warrant. Such seizures are consistent with the longstanding practice in the immigration space and the collective-knowledge doctrine.

Longstanding history confirms that officials can lawfully arrest individuals solely based on probable cause of a civil immigration violation without a judicial warrant. "In determining whether a search or seizure is unreasonable, [courts] begin with history," including "statutes and common law of the founding era." *Virginia v. Moore*, 553 U.S. 164, 168 (2008). As the Supreme Court has acknowledged, there is "overwhelming historical legislative recognition of the propriety of administrative arrest[s] for deportable aliens." *Abel v. United States*, 362 U.S. 217, 233 (1960); *see id.* at 234 (noting "impressive historical evidence" of "administrative deportation arrest[s] from almost the beginning of the Nation"). "Statutes providing for deportation" from since 1798 have "authorized the arrest of deportable aliens by order of an executive official." *Id.* at 233; *see Sherman v. U.S. Parole Comm'n*, 502 F.3d 869, 878 (9th Cir. 2007) (citing *Abel*'s historical evidence and noting a similar history for "administrative arrests of parole violators . . . since the inception of federal parole in 1910"). Thus, as federal courts routinely recognize, "federal immigration officers may seize aliens based on an administrative warrant attesting to probable cause of removability." *City of El Cenizo v. Texas*, 890 F.3d 164, 187 (5th Cir. 2018) (emphasis omitted); *see Aguilar v. U.S. Immigr. & Customs Enf't Chi. Field Off.*, 346 F. Supp. 3d 1174, 1189 (N.D. Ill. 2018) (collecting cases to support proposition that "the determination of probable cause

15

by a member of the executive branch is sufficient under the Fourth Amendment in the immigration context"); *Tenorio-Serrano v. Driscoll*, 324 F. Supp. 3d 1053, 1066 (D. Ariz. 2018).

Because the Fourth Amendment allows federal immigration officers to detain individuals without a judicial warrant, it is also clear that state and local officials can do the same without violating the Fourth Amendment. Whether a seizure is reasonable does not depend on whether the officer initiating the seizure happens to wear a federal or local uniform. The "Fourth Amendment protections are not so variable and cannot be made to turn upon such trivialities." *Moore*, 553 U.S. at 172 (internal quotation marks omitted); *see United States v. Brewer*, 915 F.3d 408, 414 (7th Cir. 2019); *Martinez-Medina v. Holder*, 673 F.3d 1029, 1036 (9th Cir. 2011). Indeed, federal law expressly authorizes state and local officers to comply with ICE detainer requests. Congress has directed that local officers, even without a prior agreement with the federal government, can "cooperate with the Attorney General in the . . . detention . . . of aliens not lawfully present in the United States." 8 U.S.C. § 1357(g)(10)(B). And as the Seventh Circuit has recognized, where "Congress has codified" a rule, its "federal statute[] enjoy[s] a strong presumption of constitutionality." *In re Search of Office of Tylman*, 245 F.3d 978, 981 (7th Cir. 2001). Likewise, federal regulations authorize federal immigration officers to "issue a [detainer request] to any other Federal, State, or local law enforcement agency." 8 C.F.R. § 287.7(a). Like with Congress's decision to adopt Section 1357(g)(10)(B), this regulation authorizing ICE detainer requests is a "carefully considered decision of a coequal and representative branch of our Government" and thus "is entitled" to a "heavy presumption of constitutionality." *U.S. Dep't of Lab. v. Triplett*, 494 U.S. 715, 721 (1990) (internal quotation marks omitted). Thus, just like federal officers, state and local law enforcement may detain an individual based on an ICE detainer request accompanied by an administrative warrant.

16

The collective-knowledge doctrine reinforces that local law enforcement does not violate the Fourth Amendment by honoring a detainer request. Under this doctrine, when federal officials request local assistance with immigration enforcement, local officers may rely on a federal officer's determination of probable cause even though the local officers may be "unaware of the specific facts that established probable cause." *United States v. Hensley*, 469 U.S. 221, 231 (1985); *see Tangwall v. Stuckey*, 135 F.3d 510, 517 (7th Cir. 1998) (allowing arrest even if an officer is unaware of the facts establishing probable cause "so long as the knowledge of the officer directing the arrest, or the collective knowledge of the agency he works for, is sufficient to constitute probable cause"); *United States v. Howard*, 883 F.3d 703, 707 (7th Cir. 2018). The doctrine applies when the arresting officer "act[s] in objective reliance on the information received," the agency requesting the arrest "ha[s] facts supporting the level of suspicion required," and the resulting arrest is "no more intrusive than would have been permissible for the officer requesting it." *United States v. Williams*, 627 F.3d 247, 252–53 (7th Cir. 2010). Local officers therefore can and frequently do rely on an ICE detainer's probable cause determination that someone is a removable alien and on the accompanying administrative warrant that attests to the facts supporting the existence of probable cause. Indeed, as the Fifth Circuit explained, "[c]ompliance with an ICE detainer [request] . . . constitutes a paradigmatic instance of the collective-knowledge doctrine" because "the detainer request itself provides the required communication between the arresting officer and an officer who has knowledge of all the necessary facts." *City of El Cenizo*, 890 F.3d at 187–88.

In sum, local law enforcement agencies' compliance with ICE detainer requests is consistent with the Fourth Amendment. This is because, before the law enforcement agency even receives a detainer request, ICE has determined probable cause exists to believe that the subject of

17

the detainer is removable and has issued an administrative warrant for the subject's arrest or deportation. That warrant and probable cause determination are included in the detainer request. Based on this probable cause determination, federal officials may lawfully detain the individual subject to the warrant. And when ICE communicates the basis for probable cause—as it does with Form I-247A and administrative warrants—so can local officers.

**B.    Plaintiff's arguments to the contrary lack merit**

Marté has argued that Sections 4 and 9(a)(3) supposedly violate the Fourth Amendment for three primary reasons. None of them are persuasive. Marté emphasizes that ICE detainer requests are not based on judicial warrants. Dkt. 1 ¶ 46. Similarly, he stresses that there is no review of an ICE detainer request by a neutral judge before or after it is issued, unlike with a judicial warrant. Dkt. 1 ¶ 46. And he argues that ICE detainer requests don't provide "probable cause to believe that a person has committed a crime." Dkt. 1 ¶ 46. Marté's position completely ignores the authority, history, and doctrines explained at length above.

To reiterate, the Fourth Amendment does not require that all seizures be based on a *judicial* warrant. *Sherman*, 502 F.3d at 876–80 (recognizing immigration-related warrants may be issued "outside the scope of the Fourth Amendment's Warrant Clause" and do not require "a judicial warrant within the scope of the Fourth Amendment"). There is "overwhelming historical legislative recognition of the propriety of administrative arrest[s] for deportable aliens." *Abel*, 362 U.S. at 233. "[F]ederal immigration officers may seize aliens based on an administrative warrant attesting to probable cause of removability." *City of El Cenizo*, 890 F.3d at 187 (emphasis omitted); *see also United States v. Quintana*, 623 F.3d 1237, 1241 (8th Cir. 2010) (rejecting Fourth Amendment challenge to "lengthy administrative detention" where "Border Patrol made a sufficient showing of probable cause to believe that [the detained individual] was a deportable

18

alien"). Similarly, "[f]ederal law empowers each [immigration officer] to arrest an alien whom the [officer] has reason to believe is in the United States illegally." *Saucedo-Carrillo v. United States*, 635 F. App'x 197, 202–03 (6th Cir. 2015) (footnote omitted) (citing 8 U.S.C. § 1357(a)(2)) (finding no Fourth Amendment violation where federal officer approached two aliens at a gas station, questioned them about immigration status, and took them into custody). And lesser intrusions are also permitted without a judicial warrant. Officers can briefly detain a car to ask the occupants about immigration status when the officers have reasonable suspicion "that a particular vehicle may contain aliens who are illegally in the country." *United States v. Brignoni-Ponce*, 422 U.S. 873, 881 (1975). It is thus not true that seizures in the immigration space are only allowed when supported by a judicial warrant.

Moreover, even assuming Marté's distorted view of the Fourth Amendment were somehow correct, his facial challenge to SEA 76 would still fail. His burden in bringing a facial challenge is to show that Section 4 and Section 9(a)(3) are invalid "in *all* [their] applications." *Lukaszczyk*, 137 F.4th at 673 (emphasis added). Marté cannot possibly make that showing. While they are always accompanied by an administrative warrant, ICE detainers are also sometimes supported by outstanding judicial warrants. This is exactly what Plaintiff incorrectly claims is needed to make a detainer lawful—*i.e.*, that ICE seeks an alien who is suspected of committing a crime. Thus, even under Marté's theory, there are instances in which it would be lawful for the Sheriff's Office to honor a detainer request and thereby comply with Section 4 and Section 9(a)(3). Accordingly, Marté's facial challenge necessarily fails.

Relatedly, the Fourth Amendment does not require a neutral magistrate to review an ICE detainer request for probable cause before or after it is issued. *Contra* Dkt. 1 ¶¶ 17, 20. As discussed, no judicial warrant or similar review by a neutral magistrate is required before officers

19

may effect a seizure for immigration-related offenses. Tellingly, to support this position Marté has cited only *criminal* cases. *See* Dkt. 1 ¶ 20 (citing *Gerstein v. Pugh*, 420 U.S. 103, 125 (1975) and *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 55–57 (1991)). Those cases have no application in the immigration context. As courts have long recognized, where "detention [i]s civil in nature," *Gerstein*'s "requirement that a magistrate evaluate [the] detention within 48 hours of [the] arrest is . . . inapplicable." *United States v. Tejada*, 255 F.3d 1, 3 (1st Cir. 2001). This accords with the holdings of other courts that criminal protections do not apply in the immigration context. *See, e.g.*, *Carlson v. Landon*, 342 U.S. 524, 537 (1952) ("Deportation is not a criminal proceeding and has never been held to be punishment. No jury sits. No judicial review is guaranteed by the Constitution."); *United States v. Dyer*, 325 F.3d 464, 468 (3d Cir. 2003) ("[W]e will follow the other Courts of Appeals that have considered the issue and hold that a civil detention, including INS civil detention, does not trigger the Speedy Trial Act's thirty day time limit."). Thus, the Fourth Amendment does not require a *Gerstein*-style review of ICE detainer requests.

Likewise, the "Fourth Amendment does not require warrants to be based on probable cause of a crime, as opposed to a civil offense." *United States v. Phillips*, 834 F.3d 1176, 1181 (11th Cir. 2016); *contra* Dkt. 1 ¶¶ 17–19. In addition to the "overwhelming historical legislative recognition of the propriety of administrative arrest[s] for deportable aliens," *Abel*, 362 U.S. at 233, courts routinely uphold statutes that allow for seizures without probable cause that a crime has been committed in other contexts, *see, e.g.*, *City of El Cenizo*, 890 F.3d at 187–88 (collecting cases); *United States v. Shields*, 789 F.3d 733, 745 (7th Cir. 2015) (parking violation); *Bruce v. Guernsey*, 777 F.3d 872, 875–76 (7th Cir. 2015) (mental-illness-based detention); *United States v. Gilmore*, 776 F.3d 765, 770–71 (10th Cir. 2015) (intoxication); *United States v. Timms*, 664 F.3d 436, 452–53 (4th Cir. 2012) (sexual dangerousness); *United States v. Burtton*, 599 F.3d 823, 830 (8th Cir.

20

2010) (open-container violation). Marté's misguided position would call into question numerous statutes and precedents that show that suspicion of a crime is not a *sine qua non* of a lawful seizure.

Marté may offer several backup arguments. In particular, he might argue that even if *federal* officers can make these kinds of seizures, *local* officers cannot do so, even at ICE's request. But this misunderstands the Fourth Amendment. The Fourth Amendment's protections do not depend on *who* performs the seizure. *See* pp. 16–17, *supra* (citing, inter alia, *Moore*, 553 U.S. at 172). Nor can such a position be reconciled with federal statute, which clearly authorizes local law enforcement to "otherwise . . . cooperate with the Attorney General in the identification, apprehension, *detention*, or removal of aliens not lawfully present in the United States." 8 U.S.C. § 1357(g)(10)(B) (emphasis added).

Alternatively, Marté may argue that even if the Sheriff's Office could effect seizures at the request of federal officers, ICE detainer requests (and accompanying administrative warrants) do not provide enough information to show the local officer there is probable cause of removability. *See* Dkt. 1 ¶ 25. But this is wrong under the collective-knowledge doctrine. *See* p. 17, *supra* (citing, inter alia, *Tangwall*, 135 F.3d at 517). Moreover, such an argument fails to carry Marté's burden in this facial challenge. It is not enough for Marté to say that it would be unlawful to honor an ICE detainer request when there isn't sufficient information for local officers to determine on their own whether probable cause exists. Rather, he must show that, regardless of the amount of information included in a detainer request and the accompanying administrative warrants and regardless of how much additional information ICE and the Sheriff's Office may exchange about the basis for probable cause of removability, it would still be unconstitutional for the Sheriff's Office to honor an ICE detainer. Marté has not made and cannot make that showing.

Marté may further argue that ICE detainers are often inaccurate. *See* Dkt. 1 ¶ 26 n.3. This

21

does not help him because, in this facial challenge, he must show that it would violate the Fourth Amendment for local officers to honor an ICE detainer request even when the request is accurate. *See Lukaszczyk*, 137 F.4th at 673. Regardless, the detainer request itself provides advice to the detainee about how to proceed if the detainer request was issued in error. *See* p. 3, *supra*; Dkt. 22-1; Dkt. 22-6. And the detainer request further instructs local officers to contact ICE if they have any questions, and there is no reason a local officer could not call to ask about a detainer request the officer believed was inaccurate. *See id.* Moreover, Section 9 includes safeguards to ensure that local law enforcement does not effect a seizure in response to a detainer that may have been issued in error.  *See* 2026 Ind. Legis. Serv. P.L. 106-2026 § 8 (West) (to be codified at Ind. Code § 5-2-18.2-9(b)).

Next, Marté may argue that the collective knowledge doctrine doesn't apply outside the criminal context. But courts have held otherwise, including in the immigration context. *See, e.g.*, *United States v. Mejia-Chicas*, 287 F. App'x 830, 832 (11th Cir. 2008) (finding reasonable suspicion to extend traffic stop based, in part, on "[t]he information that ICE agents gave [a Georgia State Patrol Officer] about illegal alien trafficking").[5]

Circuit precedent is against Marté in this regard. In *United States v. Celio* (1991), Illinois State Police stopped and searched a truck before arresting its driver "based entirely on a request from a different jurisdiction [(the U.S. Drug Enforcement Administration)] that the subject be apprehended, and the representation involved only a generalized statement without the factual details in which the suspicion was rooted." *United States v. Celio*, 945 F.2d 180, 182–83 (7th Cir.

---

[5] *See also, e.g.*, *United States v. Santibanez*, No. DR-19-CR-1363-PRM, 2019 WL 4233375, at *7 (W.D. Tex. Sep. 5, 2019) (applying collective knowledge doctrine in stop involving federal Border Patrol and county constable); *Abriq v. Metro. Gov't of Nash.*, 333 F. Supp. 3d 783, 788 (M.D. Tenn. 2018) (explaining "[the city] was entitled to rely upon ICE's determination of probable cause to detain Plaintiff . . . [u]nder the collective-knowledge doctrine").

1991). The court said that applying the collective knowledge doctrine there was "a logical extension of precedent," thereby embracing the doctrine. *Id.* at 183. It went on to say that it was "easier" to apply the doctrine because the state police received "more specific information," such as "the location and direction of a specific vehicle and its suspected contents," and because there were "more exigent circumstances" since DEA claimed there was "a continuing crime." *Id.* at 183–84. But *Celio* does not help Marté because he must show Section 4 and Section 9(a)(3) are invalid in all their applications. *Lukaszczyk*, 137 F.4th at 673. In other words, Marté must show that Section 4 and Section 9(a)(3) violate the Fourth Amendment even when ICE sends a detainer request *and* provides "more specific information" and "more exigent circumstances." Again, Marté has not made this showing and cannot do so.

As yet another approach, Marté may criticize the Fifth Circuit's decision in *El Cenizo* and urge the Court instead to follow two non-binding district court cases, *Lopez-Aguilar v. Marion County Sheriff's Department*, 296 F. Supp. 3d 959 (S.D. Ind. 2017) and *Buquer v. City of Indianapolis*, No. 1:11-cv-00708, 2013 WL 1332158, at *11 (S.D. Ind. Mar. 28, 2013). But *El Cenizo* is consistent with all the indisputable Fourth Amendment principles stated above. On the other hand, not only was *Lopez-Aguilar* reversed on other grounds by the Seventh Circuit, *see Lopez-Aguilar*, 924 F.3d 375 (7th Cir. 2019), its reasoning conflicts with the weight of authority, explained above, that holds that local law enforcement officials may cooperate with federal immigration officials pursuant to ICE detainers to detain aliens. And *Buquer*, which held that certain ICE detainers "do[ ] not provide lawful cause for arrest under the Fourth Amendment," was decided before ICE's current detainer policy became effective in April 2017. Unlike at the time *Buquer* was decided, ICE detainers now must not only be supported by probable cause to believe that the subject is an alien who is removable from the United States, but also must be accompanied

23

by an administrative arrest warrant signed by an authorized ICE immigration officer. *See* p. 3, *supra* (citing ICE Policy Number 10074.2). This Court should decline to follow the district court cases and instead adhere to the principles stated above and followed in *El Cenizo*.

## CONCLUSION

Defendant respectfully requests that the Court dismiss Plaintiff's complaint for the reasons laid out in this memorandum.

Respectfully submitted,

THEODORE E. ROKITA
Indiana Attorney General

JAMES A. BARTA
Solicitor General

BLAKE E. LANNING
Assistant Chief Deputy Attorney General

AARON M. RIDLEN
Deputy Attorney General

/s/ Robert M. Belden
ROBERT M. BELDEN
Deputy Solicitor General
Office of the Attorney General
IGC South, Fifth Floor
Indianapolis, Indiana 46204
Tel: (317) 469-1952
Fax: (317) 232-7979
Email: Robert.Belden@atg.in.gov

Office of the Indiana Attorney General
IGC-South, Fifth Floor
302 West Washington Street
Indianapolis, Indiana 46204-2770
Telephone: (317) 469-1952
Fax: (317) 232-7979
Email: Robert.Belden@atg.in.gov

*Counsel for Defendant*

25

**CERTIFICATE OF SERVICE**

I hereby certify that on May 26, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of Indiana using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Robert M. Belden
ROBERT M. BELDEN
Deputy Solicitor General