UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

RUBEN MARTE Sheriff,                       )
                                           )
                    Plaintiff,             )
                                           )
          v.                               )    No. 1:26-cv-00701-JPH-MJD
                                           )
TODD ROKITA in his official capacity as    )
Attorney General of Indiana,               )
                                           )
                    Defendant.             )

**ORDER DENYING PRELIMINARY INJUNCTION**

A new Indiana law that goes into effect July 1, 2026, will require state governmental entities to comply with federal immigration detainer requests. Before that law's passage, Monroe County, Indiana Sheriff Ruben Marté had implemented a Monroe County Sheriff's Office ("MCSO") policy that, in part, directed his officers "not to detain someone past their release date based solely on a non-criminal or administrative ICE detainer request." Dkt. 1 at 11. Sheriff Marté alleges that Indiana's new law violates the Fourth Amendment of the United States Constitution and therefore asks the Court to enter a preliminary injunction preventing enforcement of the new law. Because the Court appears to lack jurisdiction over this case under the political subdivision doctrine, Sheriff Marté's motion is **DENIED**. Dkt. [8].

**I.**
**Facts and Background**

The parties have filed uncontested exhibits, so these facts are based on that designated evidence and the undisputed facts alleged in the complaint.

1

*See* dkt. 1; dkt. 22; dkt. 28.  Neither party has requested a hearing on the motion for preliminary injunction.  *See* dkt. 8; dkt. 9; dkt. 23; *see Dexia Credit Local v. Rogan*, 602 F.3d 879, 884 (7th Cir. 2010) (A hearing is required only if "one is called for as a result of a fact issue created by" the preliminary-injunction filings.).

United States Immigration and Customs Enforcement ("ICE") may issue detainer requests for individuals it seeks to remove from the country.  *See* 8 C.F.R. § 287.7(a).  These detainer requests ask other agencies, including local law enforcement, to hold individuals for up to 48 hours after they otherwise would have been released so that ICE can take them into custody.  *Id.* § 287.7(a), (d).  The requests can be accompanied by a judicial or administrative warrant, but that is not required under ICE regulations.  *See id.*

Indiana Senate Enrolled Act 76 will impose new, state-law requirements for compliance with ICE detainers when it takes effect on July 1, 2026:

> (a) Except as provided in subsection (b), a governmental body that has custody of an individual who is the subject of an immigration detainer request shall:
>> (1) provide to the judge authorized to grant or deny the individual's release on bail under IC 35-33-8-3.2 written notice that the individual is subject to an immigration detainer request;
>> (2) record in the individual's case file that the individual is subject to an immigration detainer request;
>> (3) comply with all requests made in the immigration detainer request; and
>> (4) inform the individual that the individual is being held pursuant to an immigration detainer request issued by an authorized immigration officer.

(b) An individual who is the subject of an immigration detainer request may challenge the immigration detainer request by claiming that:

(1) the individual has been misidentified and the correct subject of the immigration detainer request is not the individual; or

(2) the individual is a citizen of the United States and is not subject to removal.

After an individual makes either of these claims, the governmental body shall contact the authorized immigration officer to determine whether the individual has been misidentified or is a citizen of the United States.

(c) A governmental body or an employee of a governmental body is not criminally or civilly liable for any action taken in compliance with an immigration detainer request under this section as long as the action does not violate federal or state law.

SEA 76 § 8 (to be codified at Ind. Code § 5-2-18.2-9). SEA 76 defines "immigration detainer request" as "a request issued by an authorized immigration officer to a law enforcement agency to detain an individual pursuant to 8 C.F.R. 287.7 or any successor provision or other applicable federal authority." *Id.* § 3 (to be codified at Ind. Code § 5-2-18.2-1.7).

Monroe County, Indiana Sheriff Ruben Marté challenges subsection (a)(3), which requires compliance "with all requests made in the immigration detainer request." *See id.*; dkt. 1 at 14. Sheriff Marté is responsible for making policy decisions for his officers about immigration detainers. Dkt. 1 at 1–2. He therefore adopted policy MCSO-12 to govern how officers handle interactions with noncitizens and with ICE. *Id.* at 1–2, 11. The current policy allows officers to assist federal immigration enforcement in several ways, including

3

informing federal officers of detainees' upcoming hearings and release dates. *See* dkt. 9 at 13.

Sheriff Marté's policy in MCSO-12 also directs officers not to detain anyone based solely on a detainer request that is not accompanied by a judicial warrant. *Id.* The policy therefore conflicts with SEA 76's required compliance with immigration detainer requests. Violations of SEA 76 are punishable by "a civil penalty of not more than ten thousand dollars ($10,000) for each knowing or intentional violation." SEA 76 § 6 (codified at Ind. Code § 5-2-18.2-5(b)).

Sheriff Marté brought this case against Indiana Attorney General Todd Rokita alleging that complying with SEA 76 would require the Sheriff's Office to violate the Fourth Amendment by keeping individuals in custody based solely on an ICE detainer request that is unaccompanied by a judicial arrest warrant. Dkt. 1 at 1–2, 13. He seeks a preliminary injunction under Federal Rule of Civil Procedure 65 prohibiting the enforcement of SEA 76 "as applied to ICE detainer requests unaccompanied by a judicial warrant." *Id.* at 14.

## II.
## Preliminary Injunction Standard

Injunctive relief under Federal Rule of Civil Procedure 65 is "an exercise of very far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021). To obtain such extraordinary relief, the party seeking the preliminary injunction carries the burden of persuasion by a clear showing. *See id.*; *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

Determining whether a plaintiff "is entitled to a preliminary injunction involves a multi-step inquiry." *Int'l Ass'n of Fire Fighters, Local 365 v. City of E. Chi.*, 56 F.4th 437, 446 (7th Cir. 2022). "As a threshold matter, a party seeking a preliminary injunction must demonstrate (1) some likelihood of succeeding on the merits, and (2) that it has no adequate remedy at law and will suffer irreparable harm if preliminary relief is denied." *Id.* "If these threshold factors are met, the court proceeds to a balancing phase, where it must then consider: (3) the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied; and (4) the public interest, meaning the consequences of granting or denying the injunction to non-parties." *Cassell*, 990 F.3d at 545. This "involves a 'sliding scale' approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). "In the final analysis, the district court equitably weighs these factors together, seeking at all times to minimize the costs of being mistaken." *Cassell*, 990 F.3d at 545.

### III.
### Analysis

The parties dispute both the merits of injunctive relief and the Court's jurisdiction over this case. *See* dkt. 23; dkt. 29. "A district court . . . can address a motion for a preliminary injunction without making a conclusive decision about whether it has subject-matter jurisdiction." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017). But "issues of subject matter

5

jurisdiction are always on the table in federal courts," including in preliminary-injunction proceedings.  *Id.*  Accordingly, if the Court lacks jurisdiction over this case, Sheriff Marté's motion for preliminary injunction should be denied on that basis.  *Id.* at 738–39; *Speech First, Inc. v. Killeen*, 968 F.3d 628, 638–39, 647 (7th Cir. 2020).

The Attorney General argues that the Court lacks jurisdiction over this case because the political subdivision doctrine prevents federal courts from resolving claims between a state and a subdivision of that state.  Dkt. 23 at 18–24.[1]  Sheriff Marté responds that Supreme Court precedent "explicitly allows public officials to challenge an unconstitutional state law" and that the sheriff's office is not a political subdivision of the state.  Dkt. 29 at 9.

A political subdivision is "created by a state for the better ordering of government."  *Williams v. Mayor of Baltimore*, 289 U.S. 36, 40 (1933).  So, under the political subdivision doctrine, "as far as the national government is concerned, a state and all of its creatures is a unit."  *City of S. Bend v. S. Bend Common Council*, 865 F.3d 889, 892 (7th Cir. 2017).  One "part of a single government" therefore cannot generally sue another part in federal court.  *Id.* (holding that the suit by South Bend's executive branch against its legislative branch was not justiciable); *State of Ill. v. City of Chicago*, 137 F.3d 474, 476

---

[1] The Attorney General also argues that the Court lacks jurisdiction because Sheriff Marté has no cognizable, redressable injury and therefore lacks standing.  Dkt. 23 at 20–24.  Because the political subdivision doctrine is jurisdictional, *see City of S. Bend v. S. Bend Common Council*, 865 F.3d 889, 892 (7th Cir. 2017), and resolves Sheriff Marté's motion for preliminary injunction, the Court does not address that standing argument.

(7th Cir. 1998) ("Relieving the state of a self-inflicted wound would be a novel mission for a federal court.").  This is consistent with "the long-recognized general principle that no person may sue himself," because "courts only adjudicate justiciable controversies."  *United States v. Interstate Commerce Com'n*, 337 U.S. 426, 430 (1949).

The Attorney General argues that here "the State is effectively the party on both sides" because Sheriff Marté "necessarily sues in [his official] capacity." Dkt. 23 at 19.  Sheriff Marté does not argue otherwise, though he cites potential individual liability in separate actions to show that he has a "personal stake in the outcome of this litigation."  Dkt. 29 at 7 n.1.  Sheriff Marté's filings unequivocally demonstrate that he brings this case in his official capacity as Sheriff of Monroe County.  Dkt. 1 at 1–2; dkt. 29 at 7 (arguing that "[o]fficials have standing to raise constitutional claims in their official capacity").  Sheriff Marté's complaint, for example, is based on SEA 76's effects on MCSO's official policies and procedures and his official orders to his deputies.  Dkt. 1 at 1–2; *see* dkt. 8 at 1–3.  Sheriff Marté also recognizes that any civil liability "would be borne by the Sheriff's Office."  Dkt. 9 at 35; *see* dkt. 8 at 2.  And the relief he seeks is an injunction against enforcing SEA 76 "as applied to" official policy "MCSO-012."  Dkt. 1 at 14; *see Miller v. Smith*, 220 F.3d 491, 494 (7th Cir. 2000) (a suit should be treated as official capacity when the complaint uses the person's official title and involves "an official policy or custom").  This all fits with SEA 76 itself, which imposes obligations on "a governmental body"—as the institution "that has custody of an individual who is the subject of an

7

immigration detainer request"—rather than on employees or officials in their individual capacities.  SEA 76 § 8 (to be codified at Ind. Code § 5-2-18.2-9(a)); *see Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (explaining that a suit is in an official capacity when "the real party in interest is the entity").

Sheriff Marté also sues Attorney General Rokita "in his official capacity as Attorney General of Indiana," as the state official empowered to enforce SEA 76.  Dkt. 1 at 1–2.  "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office" and therefore "is no different from a suit against the State itself."  *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989).  So, this case involves an Indiana county sheriff's office suing the State of Indiana.  Federal courts ordinarily lack jurisdiction over such a case under the political subdivision doctrine.  *See City of S. Bend*, 865 F.3d at 892; *see also Tr. of Ind. Univ. v. Curry*, 918 F.3d 537, 539 (7th Cir. 2019).

Sheriff Marté nevertheless argues that the political subdivision doctrine does not apply because a county sheriff's office is a constitutional office rather than a subdivision of the state.  Dkt. 29 at 9–10.  But his office remains a creation of the State of Indiana, even if the office is a constitutional one.  *See Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 363 (2009) ("[A] political subdivision, created by a state for the better ordering of government, has no privileges or immunities under the Federal Constitution which it may invoke in opposition to the will of its creator.").  And the Seventh Circuit has applied the political subdivision doctrine to subdivisions created by a state constitution

8

when they remain controlled by the state.  *See Vill. of Arlington Heights v. Reg. Transp. Auth.*, 653 F.2d 1149, 1152–53 (7th Cir. 1981).  In this way, under Indiana law, sheriffs' offices are like counties, which are similarly recognized in Indiana's Constitution, *e.g.* Ind. Const. Art. 4 § 22; Art. 6 §§ 2, 6, 9; Art. 15 § 7, and are undisputedly political subdivisions, *State v. Bd. of Comm'rs of Marion Cnty.*, 85 N.E. 513, 517 (Ind. 1908) ("A county is an involuntary corporation, organized as a political subdivision of the state."); *Dept. of Pub. Welfare of Allen Cnty. v. Potthoff*, 44 N.E.2d 494, 497 (Ind. 1942).

Moreover, the Indiana Constitution does not grant sheriffs' offices powers independent of the state.  Ind. Const. Art. 6 § 2; *see City of Trenton v. State of New Jersey*, 262 U.S. 182, 187 (1923) ("In the absence of state constitutional provisions safeguarding it to them, municipalities have no inherent right of self-government which is beyond the legislative control of the state.").  Instead, the Indiana Constitution provides only that there "shall be elected, in each county by the voters thereof, . . . [a] Sheriff."  Ind. Const. Art. 6 § 2.  "[T]he powers and duties" of the sheriff's office are then "established by the [Indiana] Legislature."  *Delk v. Bd. of Comm'rs of Delaware Cnty.*, 503 N.E.2d 436, 440 (Ind. Ct. App. 1987); *see* Ind. Code § 36-2-13-5.

An Indiana sheriff's office, like the county it serves, is therefore controlled "by the Legislature, the sovereign power, solely for governmental purposes." *Bd. of Comm'rs of Marion Cnty.*, 85 N.E. at 517; *see Vill. of Arlington Heights*, 653 F.2d at 1152–53.  That legislative control means that Sheriff Marté "exercise[s] the powers delegated by the state and act[s] for the state."  *Bd. of*

9

*Comm'rs of Marion Cnty.*, 85 N.E. at 517; *see Ysursa*, 555 U.S. at 362.  Even if those delegated powers include some independence and discretion, the legislature's delegated authority can be removed, so it does not make a county sheriff's office any less a political subdivision or arm of the state.  *Bd. of Comm'rs of Marion Cnty.*, 85 N.E. at 518 ("If such powers are delegated by the Legislature, and not by the Constitution, the Legislature may enlarge, diminish, or withdraw the same, in the absence of a constitutional restriction."); *Potthoff*, 44 N.E.2d at 497 (explaining that political subdivisions act "pursuant to statutory authority" that "the state may withdraw").  At bottom, "[h]owever great or small" the MCSO's "sphere of action, it remains the creature of the state exercising and holding powers and privileges subject to the sovereign will."  *City of Trenton*, 262 U.S. at 537.

Under these authorities, SEA 76, as applied to Sheriff Marté, is the State of Indiana dictating how its own subdivisions must respond to ICE detainer requests.  *See id.*; *Bd. of Comm'rs of Marion Cnty.*, 85 N.E. at 517.  That makes this case an "intramural dispute" not justiciable in federal court under the political subdivision doctrine.  *City of S. Bend*, 865 F.3d at 892.[2]  Sheriff Marté

_____

[2] Several circuits recognize an exception to this doctrine under the Supremacy Clause that allows a political subdivision to challenge a state statute that conflicts with federal law.  *E.g.*, *Tweed–New Haven Airport Auth. v. Tong*, 930 F.3d 65, 72–73 (2d Cir. 2019); *Branson Sch. Dist. RE-82 v. Romer*, 161 F.3d 619, 629 (10th Cir. 1998); *Rogers v. Brockette*, 588 F.2d 1057, 1068 (5th Cir. 1979); *but see Burbank–Glendale–Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360 (9th Cir. 1998) (rejecting a Supremacy Clause exception).  But Sheriff Marté does not invoke this exception or the "structural protections of the Supremacy Clause."  *Romer*, 161 F.3d at 629; *see* dkt. 1.  Nor has the Seventh Circuit adopted a Supremacy Clause exception, though it may have implicitly exercised jurisdiction under such an exception.  *See McHenry Cnty. v. Raoul*, 44 F.4th 581 (7th Cir. 2022) (deciding Supremacy Clause preemption issues in an appeal from an Illinois county against the Illinois Attorney General).  Regardless, it

seeks an exception to the doctrine under a footnote to a 1968 Supreme Court opinion finding that school board members had standing to sue to prevent their removal from office.  Dkt. 29 at 9 (relying on *Bd. of Ed. of Cent. Sch. Dist. No. 1. v. Allen*, 392 U.S. 236, 241 n.5 (1968)).  But *Allen* does not address— much less provide an exception to—the political subdivision doctrine.  392 U.S. at 241 n.5; *see City of Hugo v. Nichols*, 656 F.3d 1251, 1263 (10th Cir. 2011) (addressing *Allen* and holding that the case must be dismissed for lack of jurisdiction, explaining that "we have not found . . . a single case where a court of appeals or the Supreme Court has expressly allowed to proceed a claim by a municipality against its parent state premised on a substantive provision of the Constitution"); *see also Donelon v. Louisiana Div. of Admin. Law*, 522 F.3d 564, 567 nn.5–6 (5th Cir. 2008).

The lack of federal jurisdiction does not necessarily mean that there is no forum where the parties may adjudicate their dispute.  "State courts may have authority to resolve [this] intramural dispute, but otherwise it must be worked out the same way Congress and the President resolve their differences: by politics."  *City of S. Bend*, 865 F.3d at 892.  Indeed, the State of Indiana has

_____

appears that this case could not proceed even under such an exception.  *See Kerr v. Polis*, 20 F.4th 686, 696 (10th Cir. 2021) (en banc) (If "the political subdivision's cause of action rests on a substantive constitutional provision" it "cannot proceed."); *see City of Hugo v. Nichols*, 656 F.3d 1251, 1263 (10th Cir. 2011) (A political subdivision can bring claims "based on a federal statutory enactment affording it federal rights," but not claims based on constitutional provisions granting individual rights); *Sharritt v. Henry*, No. 1:23-cv-15838, 2026 WL 795868 at *5 (N.D. Ill. Mar. 20, 2026) (explaining that the Seventh Circuit has not recognized any Supremacy Clause exception, and even if it did it "would be limited to federal statutes that specifically provide rights to" subdivisions).  At the least, Sheriff Marté has not provided any argument under a potential Supremacy Clause exception, so he has not shown that this is "a case clearly demanding" preliminary injunctive relief.  *Cassel*, 990 F.3d at 544.

11

brought an enforcement action in Indiana state court against Sheriff Marté, *Indiana ex rel. Rokita v. Marté*, No. 53C06-2407-PL-001733 (Monroe Cir. Ct.). Moreover, federal court intervention to resolve this dispute between the State of Indiana and one of its constituent parts "would reflect a lack of respect for the state's ability to resolve these issues properly before its courts." *J.B. v. Woodard*, 997 F.3d 714, 722 (7th Cir. 2021).

As Sheriff Marté recognizes, the political subdivision doctrine would not prevent detainees from challenging the constitutionality of their detention pursuant to an ICE detainer request. Dkt. 9 at 8, 17; dkt. 30 at 16–17. It only prevents a federal court from adjudicating the dispute between a state and its subdivision regarding how ICE detainers are to be handled. *See Director, Off. of Workers' Comp. Programs v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 132–33 (1995) (explaining that it would be "inappropriate" for a federal court to determine "intrabranch and intraagency policy disputes"). If Indiana wants to fine its own political subdivision for not complying with an ICE detainer request under its understanding of the Fourth Amendment, that is for the State of Indiana to work out. *See City of S. Bend*, 865 F.3d at 892; *State of Ill.*, 137 F.3d at 476 ("Relieving the state of a self-inflicted wound would be a novel mission for a federal court.").

Since it appears that this Court lacks jurisdiction over this case, Sheriff Marté is not entitled to preliminary injunctive relief in federal court. *Simic*, 851 F.3d at 738.

## IV.
## Conclusion

Sheriff Marté's motion for preliminary injunction is **DENIED**.  Dkt. [8].

**SO ORDERED.**

Date: 6/18/2026

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel

13